PEARSON, J.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| NOEL MOTT, | ) | |
| | ) | CASE NO. 1:10CV164 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| LEE LUCAS, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 31, 32, 33, |
| Defendants. | ) | 34, 35, 36, 37, 38, and 39.] |

------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| NOEL MOTT, | ) | |
| | ) | CASE NO. 1:10CV2752 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Regarding ECF Nos. 31, 32, 33, |
| Defendant. | ) | 34, 35, 36, 37, 38, and 39.] |

## Table of Contents

page

**I. Introduction**................................................................................................................4

**II. Background**..............................................................................................................4

    A.  History of Operation Turnaround...................................................................................4

    B.  Plaintiff Becomes a Target.........................................................................................5

    C.  Plaintiff is Arrested and Enters a Guilty Plea...........................................................7

    D.  All Charges Against Plaintiff are Dismissed............................................................8

    E.  The Instant Case.........................................................................................................9

        1.  Claims.................................................................................................................9

        2.  Defendants.........................................................................................................9

**III.  Legal Standard**.....................................................................................................10

    A.  Summary Judgment..................................................................................................10

    B.  Qualified Immunity..................................................................................................12

**IV.  Discussion**............................................................................................................14

    A.  False Arrest..............................................................................................................14

        1.  Establishing a Claim of False Arrest.............................................................14

            a.  Fourth Amendment Requirements........................................................14

            b.  Role of the Court..................................................................................15

        2.  Reliance Upon an Informant..........................................................................16

            a.  Whether the Reliance Upon Bray Was Reasonable............................17

            b.  Defendants Never Established Bray Was Reliable..............................17

            c.  Defendants Did Not Corroborate Bray's Stories..................................18

            d.  Defendants Knew Bray Broke the Law and Knew Bray Lied Twice to Defendants About the Description of Events............................20

                i.  Bray is Arrested For Possession of Cocaine............................20

                ii.  Bray's Tip is Completely False................................................20

                iii.  Bray Steals Money From Defendants.....................................21

            e.  Defendants' Reliance Upon Bray Was Not Reasonable......................22

        3.  Defendant Lucas' Grand Jury Testimony......................................................24

            a.  Whether Defendant Lucas' Testimony Corrupted the Grand Jury Indictment..............................................................................................24

            b.  Whether, Setting Aside Defendant Lucas' False or Misleading Statements, the Remaining Testimony is Sufficient For Probable Cause.....................................................................................................26

            c.  Whether the Arresting Officers Knew the Warrant Was Based

Upon False or Misleading Statements and Therefore Lacked Probable Cause..........................................................................................................27
   i. Detective Metcalf.....................................................................29
   ii. Captain Faith........................................................................30
   iii. Special Agent Cross...............................................................32
4. Whether the Arresting Officers Had Probable Cause to Arrest Plaintiff Without a Warrant............................................................................33
5. Whether the Non-Arresting Officers Violated Plaintiff's Constitutional Right......................................................................................34
6. Whether the Constitutional Right Was Clearly Established............................36
B. Malicious Prosecution..........................................................................37
1. Establishing a Claim of Malicious Prosecution...............................................37
2. Whether There Was Probable Cause For the Criminal Prosecution................38
   a. Post-Arrest Conduct..............................................................39
   b. Pre-Arrest Conduct...............................................................41
C. Fabricating Evidence............................................................................42
1. Establishing a Claim of Fabrication of Evidence...............................................42
2. September 6th Failure to Corroborate............................................................43
3. September 15th DEA-6 Report...................................................................44
   a. Identification of Plaintiff........................................................44
   b. False Statements Omitting Bray's Theft.....................................46
4. Whether the False Report Created False Probable Cause...............................46
D. *Brady* Violations................................................................................48
1. Establishing a *Brady* Claim....................................................................48
2. The Evidence Did Not Materially Prejudice Plaintiff......................................50
E. Conspiracy Pursuant to § 1985..............................................................52
1. § 1985(3).........................................................................................53
2. § 1985(2).........................................................................................54
**V. Conclusion**...................................................................................54

## I. Introduction

This matter is before the Court on the Motions for Summary Judgment based upon Qualified Immunity submitted pursuant to Federal Rule of Civil Procedure 56 (b) or (c) by Defendants Lee Lucas, Robert Cross, John Ferester, Anthony Marotta, Robert Corso, Karen Tandy, Charles Metcalf, Matt Mayer, Larry Faith, J. Steven Sheldon, Thomas Verihiley and Jamaal Ansari. ECF Nos. 31, 32, 33, 34, 35, 36, 37, 38, 39.

For the reasons that follow, the Court grants Defendants United States Drug Enforcement Administration ("DEA") Administrator Tandy, DEA Special Agent in Charge Corso, DEA Assistant Special Agent in Charge Marotta, DEA Resident in Charge Ferester, DEA Task Force Officers Verihiley and Ansari; and Sheriff Sheldon of the Richland County Sheriff's Office ("RCSO") qualified immunity as to all claims. The Court grants in part and denies in part the motions for qualified immunity as to Defendants DEA Special Agents Lucas and Cross; RCSO Detective Metcalf, Sergeant Mayer and Captain Faith.

## II. Background

### A. History of Operation Turnaround

On December 31, 2004, the body of Timothy Harris was found in Richland County, Ohio. ECF No. 34 at 3. His death was believed to be drug related. ECF No. 34 at 3. In

4

response, the RCSO decided to commence undercover buys of illegal drugs from individuals in the area to combat the crack cocaine trafficking around Mansfield, Richland County–the offensive became known as "Operation Turnaround."  ECF Nos. 31 at 4; 34 at 3; 48 at 10.

On January 21, 2005, the RCSO executed a Confidential Operative Agreement with Jerrell Bray, a Mansfield resident, whereby Bray would act as a confidential operative under the supervision of RCSO Defendants Detective Metcalf and Sergeant Mayer.  ECF Nos.31 at 5; 48 at 9.  As a confidential operative, Bray would purchase drugs from targeted individuals, and officers of the RCSO would provide surveillance for the purpose of gathering information against the targeted  individuals that would hopefully lead to an arrest.  ECF No. 48 at 12.

In August or early September, 2005, the DEA joined Operation Turnaround, and DEA special agents and task force officers began working with the RCSO.  ECF Nos. 31 at 6; 48 at 11.  Bray signed another agreement with the DEA as a confidential informant, under the supervision of Defendants DEA Special Agents Lucas and Cross.  ECF Nos. 31 at 6; 48-4.  The DEA agents and officers began accompanying Bray on his buys and providing surveillance along with the RCSO.  ECF No. 31 at 8.  The protocol for these buys consisted of Bray calling the target to set up a buy; Bray and his vehicle would be searched before setting out; Bray was followed to the location area where he made the buy; Bray was followed back to the Sheriff's Office to turn over the drugs; Bray and his vehicle would be searched again; Bray would make a statement.  ECF No. 37 at 3; 39 at 12-3.  After each staged buy, Defendant Lucas would write a DEA-6 report of the events.  ECF No. 31 at 9.  Generally, Bray would be outfitted with radio equipment that made it possible for the officers to listen in on the buys, but the officers usually

did not see Bray make the buys.  ECF No. 37 at 3.

   **B.  Plaintiff Becomes a Target**

   Plaintiff Mott became a target of Operation Turnaround, and Bray informed the RCSO and the DEA agents that he would set up a buy from Plaintiff to occur on September 6, 2005. ECF Nos. 37 at 5; 48 at 34.  On that day, Bray met an individual at 435 Tremont Avenue and, while inside the house, Bray purchased drugs from a man he said was Plaintiff.  ECF No. 31 at 9. Bray told the officers he arranged to go with Plaintiff the next morning to Detroit with $36,000 to purchase drugs.  ECF No. 48 at 35.

   The next day, September 7, 2005, the officers arranged to follow Bray and Plaintiff and to have a trooper pull over the vehicle and search it, so as to find the $36,000 and Plaintiff.  ECF No. 48 at 35-6.  When the officers began following, however, Bray was in a separate car following a green Bronco, and when the trooper pulled the green Bronco over, Plaintiff was not in the car and money or drugs were not found.  ECF Nos.48 at 35-6; 58 at 3.[1]

   On September 15, 2005, Bray set up another transaction with a man he represented as Plaintiff, and the officers followed him to Richie's Store, in Mansfield, for the buy.  ECF No. 48 at 37.  The officers and agents saw Bray meet a man Bray identified as Plaintiff, and followed Bray and the man to 435 Tremont Avenue, where another man emerged and handed Bray crack cocaine.  ECF No. 48 at 37.

---

[1] Defendants Faith, Mayer and Sheldon recall this incident occurring on September 1st or 2nd; Plaintiff alleges it occurred September 6th or 7th.  ECF No. 58 at 3.  As the aforementioned Defendants note in their brief, the discrepancy is immaterial, and the Court will use the dates set out by Plaintiff.

It was later established that Plaintiff was not the man Bray met at Richie's Store on September 15th, and that he was not the man Bray purchased drugs from on September 6th; nor was he the man Bray arranged to drive to Detroit with $36,000 cash in the car. ECF No. 48 at 39.

### C. Plaintiff is Arrested and Enters a Guilty Plea

Plaintiff was arrested November 10, 2005, following a grand jury indictment in pursuit of which Defendant Lucas testified. ECF No. 48 at 50. Plaintiff, along with nineteen others, was charged with multiple counts in the indictment, and all the individuals charged were charged based upon staged buys using informant Bray. ECF No. 49-2 at 14.

In his grand jury testimony, Lucas recounted information obtained from Bray that implicated Plaintiff in the events on September 6th and 15th, in addition to stating Plaintiff was in the green Bronco on or about September 7th. ECF No. 49-2 at 26. Plaintiff was charged with three counts in the indictment: Count One; conspiring to possess with intent to distribute crack cocaine from winter 2004, to November, 2005; and Counts 15 and 22, which involved the events on September 6, 2005, and September 15, 2005. ECF No. 38-2 at 4-5. Plaintiff was released on bail on November 14, 2005. ECF No. 38 at 5.

A superseding indictment was obtained on March 15, 2006, alleging the same counts, and Plaintiff pleaded guilty to Count One. ECF No. 48 at 37. Plaintiff denied involvement in the substantive counts involving September 6th and 15th. ECF Nos. 48 at 27; 31 at 12. These charges were later dismissed. ECF Nos. 38 at 7; 42-8 at 7. Plaintiff also pleaded guilty to another charge stemming from an indictment based on a drug sale on January 12, 2006 that Plaintiff participated

in while on bail.  ECF No. 38 at 7.  That sale was recorded by Metrich, another drug enforcement agency within the RCSO.  ECF No. 38 at 7.  Metrich's conduct is not at issue.

Plaintiff was sentenced to 51 months imprisonment on Count One on August 22, 2006.  ECF No. 38 at 7.  Plaintiff was also sentenced to 46 months on the Metrich indictment.  ECF No. 38 at 7.  The sentences were ordered to run concurrently.  ECF No. 38 at 7.

**D.  All Charges Against Plaintiff are Dismissed**

Following an investigation, Bray was charged with falsely testifying against another defendant in Operation Turnaround and pleaded guilty on December 20, 2007.  ECF No. 48 at 26.  Bray admitted to misidentifying individuals; using his own drugs in staged buys to make the other individuals appear as the suppliers; and staging scripted recorded conversations during staged buys to make it appear as though other individuals were suppliers.  ECF No. 31 at 14.  Following motions to vacate filed by Plaintiff and fourteen other individuals charged in Operation Turnaround, the United States motioned another unit of this Court to dismiss all charges against the fifteen defendants, including Plaintiff.  ECF No. 38 at 9.  The charges were dismissed due to the pervasiveness of Bray's illegal conduct in the investigations, and Plaintiff was released from federal prison.  ECF No. 38 at 8-9.

On December 20, 2007, Jerrell Bray pleaded guilty to falsely testifying against defendants in criminal trials arising out of Operation Turnaround, by falsely identifying them as having participated in drug buys.  ECF No. 49-10 at 35-7.  On May 12, 2009, the United States filed criminal charges against DEA Special Agent Lucas for conduct arising from the Bray matter.  ECF No. 31 at 13.  Lucas was charged with obstruction of justice, perjury, making false

statements and violating civil rights.  ECF No. 31 at 13.  At trial, Lucas was acquitted on all counts.  ECF No. 31 at 3.  Defendant Metcalf pleaded guilty, on May 14, 2009, to violating due process rights of another defendant, Dwayne Nabors, by falsely presenting evidence against him while testifying for the government in Nabor's criminal trial.  ECF No. 48 at 26; 49-12.

### E.  The Instant Case

#### 1.  Claims

This case is brought by Plaintiff against the above named Defendants pursuant to 42 U.S.C. §§ 1983, 1985 and *Bivens v. Six Unknown Agents*.  403 U.S. 383 (1971).  ECF No. 1 at 13-4.  Plaintiff has alleged claims of false arrest, malicious prosecution and fabricating evidence, all violations of his Fourth Amendment right to be free from unreasonable seizure; and a claim alleging a *Brady* violation based on the Fifth Amendment Due Process Clause.  U.S. CONST. AMENDS. IV, V.  ECF No. 1 at 12.  Plaintiff also alleges conspiracy pursuant to § 1985–alleging Defendants conspired to fabricate evidence and tamper with evidence in order to falsely arrest, detain and charge Plaintiff.  ECF No. 1 at 14.

#### 2.  Defendants

Section 1983 provides a cause of action to private parties to enforce their federal constitutional rights against defendants who acted under color of state law.  42 U.S.C. § 1983.  Plaintiff brought this action against Sheriff Sheldon, Captain Faith, Sergeant Mayer, and Detective Metcalf, officers of the Richland County Sheriff's Department.  *Bivens* recognizes an implied private action analogous to § 1983 asserted against federal officers.  403 U.S. 383.  The federal officers in the instant case include DEA Special Agents Lucas and Cross; DEA Resident

(1:10CV164)

in Charge Ferster; Special Agent in Charge Corso; Assistant Special Agent in Charge Marotta; DEA Administrator Tandy; and DEA Task Force Officers Ansari and Verhiley.[2] ECF No. 1 at 4-5.

Plaintiff brought these claims against Defendants in their individual and official capacities pursuant to § 1983 and *Bivens*. ECF No. 1 at 4-5. A defendant is entitled to raise the affirmative defense of qualified immunity when he or she is sued in his or her individual capacity.[3] Each of the aforementioned individuals named as Defendants motion the Court to dismiss the action against them as individuals based on the doctrine of qualified immunity.[4]

### III. Legal Standard

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) governs summary judgment motions, and provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions,

---

[2] Ansari and Verhiley were identified in the Complaint as agents of the Ohio Bureau of Criminal Identification and Investigation, but it appears they were both working as DEA Task Force Officers. ECF Nos. 36 at 2; 39 at 1.

[3] The Court construes a § 1983 claim against a government official in his or her official capacity as a claim against the local government unit. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003). The local government unit is not entitled to assert immunity defenses available to individual actors sued in their individual capacities.

[4] Other named Defendants in the suit include Richland County; Unknown Officers of the Richland County Sheriff's Department; the City of Cleveland; Unknown Officers of the Cleveland Police Department; Michael McGrath and Brian Hefern, Chief of Police and Captain, respectively, of the Ohio Police Department, Cleveland; Steve Lamantia, former Director, and Unknown Agents, of the Ohio Bureau of Criminal Identification; and Jerrell Bray. ECF No. 1 at 1-3. Plaintiff also brings an action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). ECF No. 65 at 2.

> answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law . . . .

Rule 56(c)(1) specifies the materials properly submitted in connection with a motion for summary judgment:

> (A) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(e) recites that, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion." The movant, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Upon review, a court must view the evidence in light most favorable to the non-moving party to determine whether a genuine issue of material facts exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n*., 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most

civil cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### B. Qualified Immunity

"The doctrine of qualified immunity shields government officials from liability, as well as from suit, so long as their official conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardy v. Jefferson Community College*, 260 F.3d 671 (6th Cir.2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit has explained:

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps. As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that 'the officers conduct violated a constitutional right.' *Saucier v. Katz*, 533 U.S. 194, 201

> (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir.2002). 'If no
> constitutional right would have been violated were the allegations established,
> there is no necessity for further inquiries concerning qualified immunity.'
> *Saucier*, 533 U.S. at 201. 'On the other hand, if a violation could be made out on
> a favorable view of the parties' submissions, the next, sequential step is to ask
> whether the right was clearly established.' *Id. See also Burchett*, 310 F.3d at
> 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir.2003).

Regarding the question of whether the right was clearly established, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The burden is on the defendant to raise the qualified immunity defense. *See Gomez v. Toledo*, 446 U.S. 635 (1980); *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once raised, the plaintiff bears the burden of alleging facts which, if true, describe a violation of a clearly established constitutional right of which a reasonable officer, under an objective standard, would have known. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (U.S. 1985); *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). If the complaint adequately alleges the commission of acts that violate clearly established law, defendant is entitled to summary judgment if there is no genuine issue as to whether the defendant in fact committed those acts. *Mitchell*, 472 U.S. at 526.

The qualified immunity test is identical for claims brought pursuant § 1983 and *Bivens*. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Graham v. Connor*, 490 U.S. 386, 394 (1989).

(1:10CV164)

Specific to the instant case, when determining whether an officer or agent is entitled to the defense of qualified immunity, a court considers an objective standard of what a reasonable officer would have done. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law." *Id*. at 638.

## IV. Discussion

### A. False Arrest

Plaintiff argues Defendants violated a constitutional right based upon the Fourth Amendment when Defendants falsely arrested him. ECF No. 48 at 47. Defendants generally deny their actions were unconstitutional and assert claims of qualified immunity. For reasons that follow, the Court denies in part qualified immunity as to Lucas, Cross, Faith and Metcalf.

#### 1. Establishing a Claim of False Arrest

##### a. Fourth Amendment Requirements

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. CONST. AMEND. IV; *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005); *see also Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir.2009). "The finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). If, however, the grand jury proceedings were corrupted by an officer's perjury, fraud, suppression of evidence, or similar

bad faith act, probable cause will not be found based upon the indictment. *See Hinchman v. Moore*, 312 F.3d 198, 205-6 (6th Cir. 2002) ("falsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional and has been so."); *Malley v. Briggs*, 475 U.S. 335, 344-5 (1986) (finding that an unreasonable request for an arrest warrant when an officer knows he should not have applied for the warrant is unconstitutional).

A plaintiff must show "that in order to procure the warrant, [the officer] knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 635 F.3d 294, 305 (6th Cir. 2010) (citing *Wilson v. Russo*, 212 F.3d 781, 786-7 (3d Cir. 2000); *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (noting that in a § 1983 context "an officer or investigator cannot rely [up]on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant" (internal quotation marks and alteration omitted)); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (noting that "only if 'a false statement [was made] knowingly and intentionally, or with reckless disregard for the truth' and if, 'with the [ ] false material set to one side, the [ ] remaining content is insufficient to establish probable cause,' is there a constitutional violation under the Fourth Amendment'") (citing *Franks v. Delaware*, 438 U.S. 154, 155-6 (1978) (noting a court may set aside the false material to determine whether there is sufficient probable cause remaining)).

**b. Role of the Court**

(1:10CV164)

When analyzing a Fourth Amendment claim, "[i]t is the Court's duty to answer whether the officer's actions were objectively reasonable." *Jones v. Graley*, 2008 WL 343087 *4 (S.D.Ohio Feb. 6, 2008) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007) ("At the summary judgment stage...once we have determined the relevant set of facts and drawn all inferences in favor of the non-moving party to the extent supportable by the record...the reasonableness of [the officer's] actions...is a pure question of law.")); *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). Only when "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007).

Employing this guidance, to overcome the assertion of qualified immunity raised by Defendants, Plaintiff must therefore show he was arrested without probable cause. In this case, Plaintiff alleges there was insufficient probable cause to arrest him because the officers relied upon a warrant they knew was based upon false or misleading statements that were in turn based upon the unreasonable reliance upon Informant Bray. ECF No. 48 at 47-51. The Court takes the allegations step-by-step to determine whether qualified immunity is appropriate.

.                **2. Reliance Upon an Informant**

Information from a confidential informant can serve as the basis for probable cause, as long as the reliability of the confidential source is established as part of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *U.S. v. King*, 227 F.3d 732, 740 (6th Cir. 2000). Two factors are critical to the determination that a confidential informant's tip provides a substantial basis for finding probable cause: (1) an explicit and detailed first-hand

16

(1:10CV164)

description of the wrongdoing and (2) corroboration of the tip by independent investigation.

*United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir.1994).

In determining the reliability of informant information, a court, "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir.2003) (citing *Illinois v. Gates*, 462 U.S. at 238). Independent corroboration of the informant's information is not always required when the informant is reliable, as when there is a prior record of providing reliable information. *United States v. Allen*, 211 F.3d 970, 976 (6th Cir.2000) (en banc); *Helton*, 314 F.3d at 820. With these standards in mind, the Court considers whether, taken in the light most favorable to Plaintiff, the facts as alleged show Defendants' conduct rose to the level of a constitutional violation.[5]

### a. Whether the Reliance Upon Bray Was Reasonable

In accordance with Rule 56(c), the Court considers the allegations and evidence submitted by both parties to determine whether Defendant officers' and agents' reliance upon Bray was reasonable. For the reasons below, the Court finds such reliance was unreasonable.

### b. Defendants Never Established That Bray Was Reliable

Jerrell Bray executed a Confidential Operative Agreement with the Richland County Sheriff's Department on January 21, 2005, agreeing to be a "confidential operative." ECF No.

---

[5] Plaintiff appears to allege two separate instances of false arrest: the first instance being when Defendant Lucas allegedly made false or reckless statements when testifying to the grand jury which resulted in an indictment and arrest warrant, and the second instance being the subsequent arrest of Plaintiff by certain Defendants based upon the warrant procured by the indictment.

1-3.  A mere twenty days later, on February 10, 2005, it had been established that Bray was working without the consent of his probation officer; had turned the radio equipment on and off during a drug buy; was allowed to leave the scene without further surveillance or monitoring by the supervising officers, Metcalf and Mayer; and, further, Metcalf and Mayer did not always know where Bray was during an alleged drug transaction.  ECF No. 48 at 11, 49-5.  The law enforcement officers had not established that Bray was reliable before allowing his actions to go uncorroborated on his first drug buy as an informant, nor did the officers take corrective action when the above concerns were brought to their attention by an officer of Metrich, another drug enforcement unit working in the area.[6]  ECF Nos. 48 at 11, 49-5.

### c.  Defendants Did Not Corroborate Bray's Stories

Defendants Metcalf and Mayer continually failed to corroborate facts that could have been easily and safely corroborated.[7]  In March, 2005, they failed to check a GPS monitoring device tracking an alleged party to a drug transaction that could have established the individual

---

[6] Metcalf and Mayer continued to use Bray as an informant after being instructed not to do so by the Metrich officer based upon the concerns about Bray's reliability and Defendants' handling of him.  ECF Nos. 48 at 12, 49-5.

[7] While the Sixth Circuit has decided it is not always necessary to corroborate the information obtained by an informant when the informant is deemed reliable, the Sixth Circuit did not eradicate over fifty years of Supreme Court precedent establishing the need for some type of corroboration on the part of law enforcement officers.  *See United States v. Allen*, 211 F.3d at 976 (holding that only in the instant case, when there was an extremely reliable informant of five years, no police corroboration was required).  The *Allen* court further added that, pursuant to "any indicia of the informant's [un]reliability," corroboration would be necessary and, further, cautioning police officers who fail to corroborate.  *Id*.  The Sixth Circuit, just three months after *Allen*, found probable cause existed, in part, because of police corroboration of the informant's information.  *U.S. v. King*, 227 F.3d 731 (6th Cir. 2000).

was not in fact at the scene on either dates Bray claimed to have purchased drugs from him.[8]

ECF No. 48 at 13.  RCSO Defendants, now joined by DEA agents, repeatedly failed to verify

phone numbers Bray claimed to have called to set up drug buys as being the numbers he actually

called, and as corresponding with the individual registrants of the phone numbers or the actual

users at the time the call was made.[9]  ECF No. 48 at 18-36.  Defendants failed to verify car

registrations, failed to notice the absence or presence of these same cars involving individuals

other then the owners, failed to confirm resident addresses, and failed to notice the suspects did

not resemble the individuals they supposedly were identified as being.[10]  ECF No. 48 at 18-30.

The corroboration needed would not have placed Bray or the officers in danger, nor would it

---

[8] The individual was wearing a GPS device issued by the Adult Parole Authority, a fact Defendant Mayer was aware of as stated in his report, and either did not check with the parole authority as to the individual's whereabouts or checked and chose not to disclose the non-corroborating information.  ECF No. 48 at 13.

[9] Plaintiff presents evidence of mistaken phone identities occurring on September 9, 15, 20; October 5 and 25, 2005.  ECF No. 48 at 17-29.  Defendant Metcalf, testifying at Lucas' criminal trial, admitted they did not verify the telephone numbers Bray claimed to dial to ensure they were the actual phone numbers Bray had dialed.  ECF No. 49-1 at 1742-3.

[10] A Metrich officer, observing a drug buy on October 5, 2005 wrote a report indicating the suspect was not RW, a man he was very familiar with, and that the car license indicated the car did not belong to RW, but in fact belonged to Informant Bray.  ECF No. 48 at 27-8.  The Metrich officer notified his supervisor, wrote a report to Lucas, and received a follow up call from Defendant Faith stating Lucas was "positive" he purchased the drugs from RW.  ECF No. 48 at 28.  The man was Robert Harris, not RW.  ECF No. 48 at 29.

Further, Defendants videotaped a buy on September 9, 2005 allegedly from Ballard, a skeletal 6'5" man with a buzz cut.  However, the man who appears in the video selling drugs to Bray is of medium build with two to three inch braids and was approximately 5'10".  ECF No. 48 at 18.

have risked Defendants' anonymity for the purposes of working under cover.[11]

### d. Defendants Knew Bray Broke the Law and Knew Bray Lied Twice to Defendants About the Description of Events
#### i. Bray is Arrested For Possession of Cocaine

In a show of further unreliability, Bray was arrested for possession of crack cocaine, a fourth degree felony, on March 31, 2005, a mere ten weeks after becoming a confidential informant.  ECF No. 48 at 14.  The cocaine was found in a secret compartment in his car, and possession of such violated the agreement he had signed with the Richland County Sheriff's Office.[12]  ECF Nos. 48 at 15; 31-3.

#### ii. Bray's Tip is Completely False

Bray told Defendants that on September 7, 2005, Bray, Plaintiff and Arrico Spires would be driving to Detroit with $36,000 cash to purchase drugs.  ECF No. 48 at 15.  Instead, there were two cars–the second containing Bray, and the lead car, a green Bronco, which Bray said contained Plaintiff, Spires and $36,000.  ECF No. 48 at 16.  The lead car was pulled over by a Trooper and, in fact, contained Chrystal Dillard, Darron Transou, and no money.  ECF Nos. 48 at 16; 49-5 at 34-5.  When an informant's tip turns out to be incorrect, corroboration is even more important and necessary.  *Gates*, 462 U.S. at 238-9 (determining that, under a totality of the

---

[11] In *U.S. v. Allen*, the Sixth Circuit noted corroboration may hinder state efforts when the risk of surveillance detection may impede safety and raise suspicion, indicating in such instances corroboration is not as important in a totality of the circumstances analysis.  211 F.3d at 976. *See also U.S. v. King*, 227 F.3d at 742 (describing as sufficient corroboration by a detective verifying with the Ohio Department of Motor Vehicles that the vehicle described was registered to defendant and also verified the address provided by the informant, citing *Gates*).

[12] The agreement recites that the undersigned will not "handle or use any drugs unless specifically authorized to do so and under the direction of my control officers."  ECF No. 1-3 at 1.

circumstances test, the "basis of knowledge" of the tip are relative when the strength of one

factor compensates for the deficiency of another). Because Bray's tip turned out to be

completely false, Defendants were on notice he was unreliable and corroboration going forward

was necessary.[13]

### iii. Bray Steals Money From Defendants

On September 15, 2005, Bray stole "buy money," secreting it behind the radio in his car

after completing a staged drug transaction. ECF Nos. 48 at 20; 39 at 14. Immediately following

the staged buy, which was supposed to have involved Plaintiff, Bray told Defendants that

Plaintiff wanted more money than Defendants had provided him, and that Bray spent twenty

dollars of his own money so as to prevent the buy from going "sour." ECF No. 48 at 20.

---

[13] In *Gates*, the police received an anonymous tip declaring a couple was selling drugs, and detailing the exact modus operandi for the couple–from a Chicago suburb, Sue drives the car to Florida, where it is loaded up with drugs; Lance flies down and drives the car home; Sue flies back. *Gates*, 462 U.S. at 225. The tipster wrote that on May 3rd, Sue would be driving down and Lance will drive it back, with over $100,000 worth of drugs. *Id*. After corroborating the address, police officers confirmed Lance had a flight to Florida on May 5th, and contacted DEA agents for surveillance in Florida. *Id*. The DEA agents confirmed Lance arrived, went to the Holiday Inn room reserved by one Sue Gates, who drove a car with Illinois plates that matched the number registered to the Gates. *Id*. The Gates then drove home and were greeted by police officers, with a warrant, who searched the car and found 350 pounds of marijuana. *Id*.

As to the fact Sue drove home with Lance rather then flying, as the tipster had informed she would, the Court found it was not fatal to a finding of probable cause. The Court stated that "[w]e have never required that informants used by the police be infallible," and something short of perfection is not an infirmary to probable cause. *Id*. at 246.

In the instant case, no part of Bray's tip materialized. The car did not contain the people he alleged it would contain; there was no money in the car as he had alleged; and, in fact, there was nothing to suggest the car was even traveling to Detroit. The green Bronco fiasco hardly established Bray as a reliable informant. *See also Alabama v. White*, 496 U.S. 325, 331-2 (1990) (noting that when an informant's future predictions are verified it causes a reasonable indication as to reliability).

(1:10CV164)

Defendant Verhiley, however, found $780.00 of the buy money while searching Bray's car at the station following the transaction. ECF Nos. 48 at 20; 39 at 14. Lucas' report did not disclose the theft, but merely stated "The CS returned the remaining $780.00 OGF to S/A Lucas. The CS and his/her vehicle were again searched with negative results for any drugs or money." ECF No. 42-5 at 3. Defendants involved that day knew Bray had lied about the amount he paid for the drugs, and that he had stolen $780.00 of the buy money, that they later recovered.

Plaintiff has alleged sufficient facts supported by evidence in accordance with Rule 56(c) to compel a finding that a reasonable law enforcement officer could not have reasonably believed that Informant Bray was reliable. The RCSO officers could not have reasonably relied upon him from the beginning, having never established his reliability, and the DEA Agents that joined the investigation knew by early September, 2005, that Bray was unreliable.

### e. Defendants' Reliance Upon Bray Was Not Reasonable

If Bray had not been deemed reliable, Defendants could not have forgone corroboration.

*U.S. v. Allen*, 211 F.3d at 976; *U.S. v. King*, 227 F.3d at 742; *Illinois v. Gates*, 462 U.S. at 244.

Beyond a dogged insistence that it was so, Defendants assert no evidence[14] to support their

---

[14] Defendants assert Bray was deemed reliable, but offer no evidence of prior involvement with Bray to explain how their reliance upon Bray was reasonable. Plaintiff has asserted evidence that Bray had a prior conviction for aggravated burglary and involuntary manslaughter and had been known to use false names. ECF No. 49-6 at 1164. Defendant Mayer, testifying at Lucas' criminal trial, stated Bray had been used only once before the Harris murder–when Bray was a suspect in a burglary and later assisted the police in identifying the recovered goods. ECF No. 49-1 at 1151-2.
    "If a party...fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion." Fed. R. Civ. Pro. 56(e). Plaintiff has specifically alleged facts and presented evidence to show Bray unreliable, and Defendants have not made, with specificity, any contrary allegations or presented

argument that Bray had been deemed reliable and that reliance on him was reasonable.

Even assuming, *arguendo*, that at one time Defendants were reasonable in considering Bray reliable, the record shows Defendants resisted even the slightest efforts of corroboration despite unequivocal events casting doubt upon Bray's reliability. The corroboration necessary would have been easily and safely achieved, and would have revealed to Defendants the falsity of Bray's stories.[15] Plaintiff shows Defendants knowingly and repeatedly turned a blind eye to any suggestion their handling of Bray and the staged drug buys were worrisome, including ignoring another law enforcement officer's report alerting RSCO Defendants to the fact their reliance upon Bray was hasty and another law enforcement officer's report alerting Defendants to the misidentification of a car and a man. They ignored implications from Bray's arrest on possession of cocaine and theft of buy money. Defendants continued to rely on Informant Bray even after his detailed prediction failed to come to fruition.

Even had Defendants been working with a reliable informant whose stories had been corroborated, at the time Bray was arrested for possession of cocaine in violation of the informant agreement, indicating Bray had become compromised, and certainly at the time Bray lied to Defendants about the cost of the sale and stole buy money on September 15, 2005, all reliability was shattered. The point at which Bray stole buy money was a point where any lay version of common sense, let alone the judgment of reasonable and trained police officers and

---

contrary evidence beyond the self-serving affidavits declaring Bray had been reliable in the past and was reasonably relied upon during the investigation.

[15] Indeed, a Metrich officer observing the staged buy on October 5, 2005, had a vehicle license confirmed as he watched the transaction unfold, so corroboration was possible. ECF No. 48 at 28.

federal agents, should have dictated the informant was no longer, if he ever had been, reliable.

The Court finds that, given the totality of the circumstances, Defendants' reliance upon Bray was objectively unreasonable. The next step is to consider whether the unreasonable reliance upon Bray created false probable cause for his arrest. Plaintiff alleges this occurred when Lucas gave false and misleading testimony that was based upon information from Bray to the grand jury in order to obtain an indictment which created an invalid arrest warrant. ECF No. 48 at 50-1.

### 3. Defendant Lucas' Grand Jury Testimony

Plaintiff alleges DEA Special Agent Lucas engaged in acts of deliberate falsehood or reckless disregard for the truth when omitting information from or making false statements to the grand jury in his testimony, resulting in an invalid warrant and an unlawful arrest. ECF No. 48 at 50. Specifically, Plaintiff argues Lucas' testimony was unlawful because no reasonable police officer would have deemed Bray reliable, as Lucas had done. ECF No. 48 at 47-49. Lucas denies making false or reckless statements in his testimony and further argues it was reasonable to rely upon the information obtained from Bray during his grand jury testimony. ECF No. 31 at 19-21.

#### a. Whether Defendant Lucas' Testimony Corrupted The Grand Jury Indictment

The Court considers the testimony provided by Lucas to the grand jury on November 8, 2005, to determine whether Plaintiff makes a substantial showing that the testimony was false or misleading, made intentionally, knowingly, or with a reckless disregard for the truth, and whether such testimony was material to the finding of probable cause. *Vakilian*, 335 F.3d at 517.

24

(1:10CV164)

For the reasons below, the Court finds that Plaintiff makes the required showing.

In his grand jury testimony, Lucas states the investigation started with the use of Bray in January or February, 2005. ECF No. 49-2 at 11-2. When asked about the specific allegations pertaining to Plaintiff, Counts 15 and 22 (the substantive counts involving September 6th and 15th), Lucas relies entirely upon information from Bray and asserts that Bray was reliable and the information from him was corroborated.[16] ECF No. 49-2 at 12, 14, 25-6, 28-9. The record before the Court reflects that a reasonable police officer or government agent would not have found Bray reliable, and the information from Bray was not independently corroborated. These statements are at least misleading, and made knowingly or with a reckless disregard for the truth.

Lucas further stated Plaintiff was driving the green Bronco on or about September 8, 2005.[17] ECF No. 49-2 at 26. It has been established Chrystal Dillard and Darron Transou were in the green Bronco, a fact Lucas knew at the time of his testimony, as he was the author of the DEA-6 report which identified the occupants of the green Bronco as Dillard and Transou. ECF Nos. 48 at 16; 49-5 at 34-5; 49-2 at 2832. That statement made to the grand jury is a false statement made knowingly or with a reckless disregard for the truth.

Because the allegations surrounding Counts 15 and 22 were based solely upon

---

[16] Lucas explained at the beginning of his testimony that law enforcement corroborated the information from the informant, and searched the informant and his vehicle to ensure he had no drugs or money. ECF No. 49-2 at 12. Lucas omits the facts surrounding the occasion they did find money in Bray's vehicle.

[17] According to Plaintiff, the Bronco incident occurred on September 7, 2005; in his testimony, Lucas is talking about an event that occurred on September 9, 2005, and says, "We followed Noel Mott the day before..." ECF No. 49-2 at 26. The Court assumes there was only one green Bronco incident and that it occurred on September 7th or 8th.

(1:10CV164)

information from Bray and were material or necessary to the finding of probable cause, the Court

finds that Lucas' testimony rose to the level of false or misleading statements or omissions made

intentionally, knowingly, or with a reckless disregard for the truth that materially effected the

probable cause determination.[18]

### b. Whether, Setting Aside Defendant Lucas' False or Misleading Statements, the Remaining Testimony is Sufficient For Probable Cause

Even if Lucas' statements were misleading or false, the Court must now consider

whether, without these statements, probable cause may still exist for the indictment and warrant.

*Franks*, 438 U.S. at 155-6.  In reviewing the transcript of Lucas' testimony, the Court finds there

is nothing specific alleged about Plaintiff aside from the testimony as to Counts 15 and 22.

Without these specific allegations, there is only a general statement that Plaintiff was involved in

the drug trade.  ECF No. 49-2 at 10.

When asked when the investigation into the alleged drug trade began, Lucas stated that

the "Richland County Sheriffs Office developed an informant who advised there was a group of

individuals that were coming down from Detroit, Michigan, also from Columbus, Ohio.  That

these people were fighting over taking over the crack cocaine trade in Mansfield, Ohio."  ECF

No. 49-2 at 11.  Later, when asked about the controlled buys, Lucas stated, "[a]ll these buys was

---

[18] In the analogous context of a magistrate judge's determination of probable cause, in deciding that the police officer was not entitled to qualified immunity when he requested a warrant despite knowing the affidavit did not establish probable cause, the Supreme Court has said that "if no officer of reasonable competence would have requested the warrant, *i.e.*, his request is outside the range of the professional competence expected of an officer...the officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate [judge]."  *Malley v. Briggs*, 475 U.S. 335, 345-6, FN9 (1986).

26

the same confidential informant, same source of information, CI, whatever you want to call them. He was the same person we used during all of this." ECF No. 49-2 at 14.

Because all the controlled buys involved Bray as an informant, and even the general statement about what prompted the initial investigation into the drug trade in Mansfield was attributed to the unreliable informant Bray, the Court can find nothing in the record of the grand jury testimony of Lucas that was not in reliance upon Informant Bray. The entire testimony is tainted by such statements, negating probable cause based upon the warrant.[19]

### c. Whether the Arresting Officers Knew the Warrant Was Based Upon False or Misleading Statements and Therefore Lacked Probable Cause

If the arresting Defendants knew the warrant was based upon false or misleading statements, rendering the warrant invalid, Defendants cannot rely upon the warrant as a defense to the false arrest claim. A facially valid warrant provides a complete defense to an action for false arrest made pursuant to § 1983. *Baker v. McCollan* 443 U.S. 137, 143-4 (1979); *Sykes*, 625 F.3d at 305. However, "a facially valid warrant is not always sufficient to merit summary judgment in an action brought pursuant to § 1983 when evidence exits that a defendant intentionally misled or intentionally omitted information at a probable cause hearing for an arrest...warrant provided that the misleading or omitted information is critical to the finding of probable cause." *Voyticky*, 412 F.3d at 677.

The proper defendants in an action pursuant to § 1983 are the police officers who were personally involved in the incident alleged to have resulted in a violation of the plaintiff's civil

---

[19] Defendants do not provide an argument there was probable cause based upon anything or anyone other than Informant Bray. *E.g*., ECF No. 31 at 19-20.

(1:10CV164)

rights. *Scott v. City of Cleveland*, 555 F.Supp.2d 890, 896 (N.D. Ohio 2008) ("[a]s a general rule, mere presence at the scene of the alleged Fourth Amendment violation, without showing direct responsibility for the action, is not enough to give rise to § 1983 liability," citing *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991)). The plaintiff may properly state a claim against both the officer that obtained the warrant in addition to the officers that executed the warrant. *Smith v. Barber*, 195 F.Supp.2d 1264, 1276 (D. Kan. 2002) (finding that "[w]hen the executing officers knew the information upon which the warrant was based was unreliable due to the well-known history of one of [the informants] and knew that the information was un-corroborated," the officers were not shielded by the defense of a facially valid warrant, relying on *United States v. Leon*, 468 U.S. 897, 923 (1984)); *Juriss v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992) (finding no distinction between officers who procured a warrant and officers who executed the warrant knowing it had been fraudulently procured, citing *Leon*); *Gregory v. City of Louisville*, 444 F.3d 735, 759 (6th Cir. 2006) (finding that, in order to properly state a claim against an officer who did not testify in a probable cause hearing, the plaintiff must present an argument or evidence that the falsely testifying officer's knowledge can be imputed to the non-testifying officer).

Though Plaintiff asserts the claims against all Defendants generally, the arresting officers on November 10, 2005 were Lucas, Cross, Metcalf and Faith. ECF No. 48 at 40. As already established, Lucas made the statements and was certainly aware they were false at the time of his grand jury testimony. As to the remaining arresting officers, Plaintiff alleges they knew the warrant was based upon false or misleading statements because the officers knew Bray was

28

unreliable, that Bray was the investigations' sole source of information, and that they knew any testimony given to procure a warrant based upon Bray's information was false or misleading. ECF No. 48 at 49-51.  The Court considers the direct involvement of the remaining arresting officers with the investigation and with Bray to establish whether Plaintiff sufficiently shows that Lucas' knowledge can be imputed to them, or if they had independent knowledge of Bray's unreliability, thereby removing the shield of the facially valid warrant. *See Id.*

### i. Detective Metcalf

Plaintiff alleges Metcalf knew from direct experience due to being present during buys, or should have known from reading the reports and checking the records, that Bray was unreliable.  ECF No. 48 at 49.  Metcalf states that his role was to provide security and surveillance for the staged drug buys.  ECF No. 37 at 3.  Metcalf further argues he did not testify before the grand jury and could not make false statements, and that he had no knowledge of Bray's wrongdoing.  ECF No. 59 at 4, 9.

As already noted, Metcalf was one of the supervisors initially assigned to Bray.  ECF Nos. 48 at 11; 49-15.  He worked almost exclusively with Bray until the DEA became involved in September, 2005.  ECF No. 48 at 11.  He was repeatedly warned by a Metrich officer as to the use and reliability of Bray.  ECF Nos. 48 at 12, 49-5.  He failed to corroborate Bray's stories and intervened on Bray's behalf to arrange for the criminal case regarding Bray's March 2005 arrest for cocaine possession to be dismissed.  ECF No. 48 at 14.

Metcalf was monitoring the GPS when the green Bronco was stopped, and was shortly thereafter informed by the Metrich officer that Dillard and Transou, not Plaintiff, was in the

29

(1:10CV164)

Bronco, thereby on notice Bray's predictions were false. ECF No. 48 at 17. Metcalf was further

involved with the transactions on September 20 and October 5, 2005–transactions the

Defendants failed to corroborate by checking phone numbers or license plates and, once again,

was the subject of a warning from a Metrich officer. ECF No. 48 at 21-28.

Because Metcalf knew the extent of the unreliableness of Bray, and knew that the

investigation relied exclusively on Bray, Metcalf had to know the warrant was based upon false

or misleading testimony about the reliableness of the informant and the police corroboration.

Metcalf does not argue he was not aware of the nature of Lucas' testimony, only that he himself

did not testify and that Bray was reliable. ECF No. 59 at 4, 9. Because the Court has determined

reliance upon Bray was unreasonable, and because Metcalf does not assert a contrary argument

to Plaintiff's allegations that Metcalf knew the warrant was based upon Lucas' false or

misleading testimony, the Court determines that Metcalf knew the warrant was based upon false

or misleading statements, rendering the warrant invalid and the arrest based upon that warrant

unlawful.

### ii.  Captain Faith

Plaintiff alleges Faith knew from direct experience being present during buys, or should

have known from reading the reports and checking the records, that Bray was unreliable. ECF

No. 48 at 49. Faith states he had reason to believe Bray was reliable and, further, though he was

involved in many of the transactions involving Bray, such involvement simultaneously reached

short of actual involvement in investigating Plaintiff because Faith never identified Plaintiff as

being present at the controlled buys. ECF No. 32 at 6.

Faith was involved directly in two of the transactions that Bray said involved Plaintiff and failed to corroborate the events he witnessed or information that was given him by Bray. ECF No. 32-1 at 3-4. Though Faith states the Sheriff's Office used Bray at times prior to 2004, and that Bray "provided what was believed to be accurate and credible information," Faith does not point to any specific reasons why his reliance upon Bray was reasonable.[20] Plaintiff produces evidence that shows a Metrich officer shared her concerns with Faith about the use of Bray and the lack of proper protocol. ECF No. 49-5 at 15-6. At the point Faith monitored the "cobble phone" on September 15, 2005, and heard Bray as he purchased drugs from, as it turned out, Transou, rather than Plaintiff (ECF No. 48 at 19-20), all apparent credibility should have been called into question. During that transaction, Faith heard Bray counting the money to Transou. ECF No. 48 at 20. Faith heard that Bray paid $780.00 less for the drugs than he was supposed to have paid. ECF No. 48 at 20. This should have put Faith on notice that Bray was going to be leaving the buy with $780.00 cash that he failed to tell the officers about. As stated, any reasonable police officer would have known at this point Bray was unreliable, and any reliance upon him was misplaced and objectively unreasonable.[21]

---

[20] Once again, the evidence submitted shows Bray had been used only once before the Harris murder–when Bray was a suspect in a burglary and later assisted the police in identifying the recovered goods. ECF No. 49-1 at 1151-2.

[21] Additionally, in a sworn affidavit for a search warrant of Plaintiff's residence, incorrectly identified, Faith stated that he had known Bray to be reliable, had worked with Bray numerous times where the information provided by Bray was true and accurate, and that Bray is always searched after a transaction and drugs have never been found. ECF No. 48 at 40; 49-2. The affidavit notably omitted that stolen money had been found. ECF Nos. 48 at 40; 49-2. Though the search warrant is not at issue here, the information belies Faith's assertion that he had not played a central role in the investigation of Plaintiff.

(1:10CV164)

Because Faith knew Bray was unreliable, and knew the extent to which the investigation relied upon Bray, the Court determines that Faith knew the warrant was based upon false or misleading statements, rendering the warrant invalid and the arrest based upon that warrant unlawful.

### iii. Special Agent Cross

Plaintiff alleges Cross knew from direct experience due to being present during buys, or should have known from reading the reports and checking the records, that Bray was unreliable. ECF No. 48 at 49.  It is undisputed that Cross conducted surveillance on September 6, 2005, and took joint physical custody of the cocaine after the staged buy.  ECF Nos. 38 at 11; 48 at 39. Cross asserts that, on that day, he worked with five other officers and Bray, and was not in a position to view the transaction and was not listening in on that transaction.  ECF No. 38 at 11. Cross denies he was present on September 15, 2005 (ECF No. 61-8 at 2), even though his name appears on the DEA-6 report (ECF No. 49-2 at 14348) and Defendant Verhiley stated in his sworn declaration, submitted to the Court by Cross, that Cross was present on September 15, 2005. ECF No. 61-9 at 2.  Cross claims his name is on the DEA-6 report in error.  ECF No. 61-8 at 3.

Plaintiff has sufficiently alleged facts that, if true, would constitute a constitutional violation.  If Cross were present on September 15, 2005, he would have had direct knowledge of Informant Bray's theft indicating unreliability and further awareness of the lack of corroboration. Plaintiff has sufficiently alleged that Cross was involved in Operation Turnaround and knew of the unreliability of Informant Bray, and a jury could reasonably find Cross knew or should have

(1:10CV164)

known of the unreliability of Bray. Because a genuine issue of material fact exists, due to the

contradicting evidence submitted by Plaintiff and Defendants, as to whether Cross was present

for all or part of the events on September 15, 2005, and whether Cross knew the full extent of

Bray's unreliability, qualified immunity as to Cross is denied.

### 4. Whether the Arresting Officers Had Probable Cause to Arrest Plaintiff Without A Warrant

Even if the warrant were invalid, an arrest pursuant to an invalid warrant is constitutional

if the arresting officers had independent probable cause to arrest Plaintiff without a valid

warrant. *Sampson v. City of Xenia*, 108 F.Supp.2d 821, 837-39 (S.D. Ohio 1999) (finding an

arrest made pursuant to an invalid warrant is lawful if supported by independent probable cause).

Probable cause is "reasonable grounds for belief, supported by less than *prima*

*facie* proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010)

(citing *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). "The belief of guilt must be

particularized with respect to the person to be ... seized." *Sykes*, 625 F.3d at 306 (citing *United*

*States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006). Generally, probable cause exists when the

police have "reasonably trustworthy information ... sufficient to warrant a prudent man in

believing that the petitioner had committed or was committing an offense." *Gardenhire v.*

*Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

"Probable cause determinations involve an examination of all facts and circumstances within an

officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows*, 167 F.3d 1007,

1012 (6th Cir. 1999). "Where qualified immunity is asserted, the issue of probable cause is one

for the court[.]" *Vakilian*, 335 F.3d at 517.

(1:10CV164)

Where an arrest is made pursuant to an invalid warrant, "the question becomes..., whether the arresting officers were justified in their belief that plaintiff had probably committed or was committing a crime." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). "An officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire*, 205 F.3d at 318 (citing *Dietrich*, 167 F.3d at 1012).

Without information from Informant Bray, there is nothing to suggest Lucas, Metcalf and Faith can reasonably claim to have had probable cause to arrest Plaintiff. As noted above, it was Bray who initially identified Plaintiff as a member of the alleged Detroit drug ring. All the information presented to the officers and agents relating to Plaintiff was initiated by Bray. The evidence submitted does not reflect there was reasonable grounds for belief that a crime had been committed other than information the officers and agents had gotten from Bray and Defendants make no such argument.[22]

Because no basis for independent probable cause to arrest Plaintiff without a valid arrest warrant existed, Defendants Lucas, Metcalf and Faith unlawfully arrested Plaintiff in violation of Plaintiff's constitutional right. A factual issue exists as to whether Cross' conduct was similarly unlawful.

---

[22] Judge Adams, in dismissing the original criminal case against Plaintiff and fourteen other defendants charged in "Operation Turnaround," agreed with the government seeking dismissal that "Bray's illegal conduct was so pervasive and his credibility so tainted by his guilty plea, that each of the above-captioned defendants should be entitled either to a new trial or to withdraw their guilty pleas." ECF No. 31-18 at 5.

### 5. Whether the Non-Arresting Officers Violated Plaintiff's Constitutional Right

Plaintiff generally alleges "the Defendants in this case falsely arrested Plaintiff." ECF No. 48 at 47. In order to establish a § 1983 claim against an officer or official, the plaintiff must show the officer or official either actively participated in the alleged unconstitutional conduct or "impliedly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate."[23] Scott, 555 F.Supp.2d at 896 (citing Leary v. Daeschner, 349 F.3d 888, 903 (6ᵗʰ Cir. 2003)). The latter conduct is the basis of supervisory liability in a § 1983 action. Id.

Plaintiff alleges DEA Administrator Tandy, DEA Special Agent in Charge Corso and Assistant Special Agent in Charge Marotta are liable based upon supervisory liability because they held supervisory positions in the DEA administration.[24] ECF No. 48 at 41. Plaintiff,

---

[23] Plaintiff alleges all Defendants named in the action are liable based upon what appears to be "bystander liability," and cites Smith v. Heath, 691 F.2d 220, 224 (6ᵗʰ Cir. 1982) in support. ECF No. 48 at 41. Plaintiff alleges that, "[i]n short, any of the officers who were directly involved in the investigation, would have known that Bray could not be trusted and therefore would have known that the evidence against Mott, which relied entirely upon Bray's word and the word of officers who lied to support him, was corrupted." ECF No. 48 at 41.

Smith, however, does not stand for the proposition that any officer involved in an investigation is liable if that investigation leads to a violation of rights. Rather, the Smith holding included "nonsupervisory officers who are present at the scene of a violation of another's civil rights and who fail[ed] to stop the violation." Smith, 691 F.2d at 225. In Smith, the officer in question entered a dwelling after other officers had unlawfully entered. Id. The Smith court noted the officer was liable even though he did not make the initial unlawful entry, because he still entered unlawfully after the initial unlawful entry and "was present while the other officers unlawfully searched the apartment." Id. In the instant case, the violation occurred at the time Defendants arrested Plaintiff, and the officers present at the scene were Lucas, Cross, Metcalf and Faith.

[24] Plaintiff, in his Complaint, alleges generally that the twenty-one Defendants are "officers or supervisors." ECF No. 1 at 4-6. Plaintiff, in opposition, contains the supervisory liability section to Tandy, Corso and Marotta and does not bring allegations or evidence of

however, fails to point to any evidence they impliedly authorized, approved or knowingly

acquiesced in the alleged unconstitutional conduct of an offending subordinate. Plaintiff argues

the supervisors would have known about "the activities in Mansfield" by reading reports

submitted by DEA supervisors about Bray (ECF No. 48 at 44-5), but the reports presented to the

Court are the DEA-6 reports, and there is nothing on the face of those reports to indicate

improper acts rising to the level of a constitutional violation. In fact, Plaintiff alleges Lucas and

other Defendants were falsifying the reports (ECF No. 48 at 53), and fails to show how

supervisors would have seen through any falsification or would have been alerted to any

wrongdoing. Defendants Tandy, Corso and Marotta are entitled to qualified immunity.

### 6. Whether the Constitutional Right Was Clearly Established

It has long been settled law that unreasonable reliance upon an unreliable informant is

inadequate for a probable cause determination and is therefore unconstitutional when such

reliance is the basis for probable cause to arrest. *Draper v. United States*, 358 U.S. 307, 312-3

(1959); *Gates*, 462 U.S. at 241-2; *U.S.* v. *King*, 227 F.3d at 742. Falsifying facts to establish

probable cause to arrest has been unconstitutional. *Hill v. McIntyre*, 884 F.2d at 275; *Donta v.

Hooper*, 774 F.2d 716, 718 (6th Cir. 1985); *Franks v. Delaware*, 438 U.S. at 168 (1978).

Relying upon a warrant obtained by false or misleading statements has been unconstitutional.

---

supervisory authority as to the remaining Defendants, instead alleging the remaining Defendants were directly involved. ECF No. 48 at 44. The Plaintiff has an affirmative duty to establish the existence of an element essential to its case. *Celotex*, 477 U.S. at 322. Plaintiff does not sufficiently allege supervisory authority as to the remaining eighteen Defendants and the evidence presented does not clearly illustrate supervisory relationships. The Court considers liability as to the specific supervising Defendants Plaintiff advances–Tandy, Corso and Marotta.

(1:10CV164)

*Sykes*, 625 F.3d at 305; *Voyticky*, 412 F.3d at 677; *Vakilian*, 335 F.3d at 517.  Arresting an

individual without sufficient probable cause is unconstitutional.  U.S. CONST. AMEND. IV; *Gates,*

462 U.S. at 239; *Voyticky*, 412 F.3d at 677; *Sykes*, 625 F.3d at 305.

      The conduct of Lucas, Metcalf and Faith, and Cross, if Plaintiff's facts are taken as true,

is and has been clearly established as unconstitutional, and the unconstitutionality of the conduct

would have been clear to a reasonable officer or agent.  *See Anderson*, 483 U.S. at 640.

Accordingly, Defendants Lucas, Cross, Metcalf and Faith are not entitled to qualified immunity

as to the claim of false arrest.

### B.  Malicious Prosecution

      Plaintiff alleges Defendants violated a constitutional right when they maliciously

prosecuted him.  ECF No. 1 at 12.  Defendants deny involvement in the prosecution of Plaintiff

and argue, in the alternative, there was probable cause to prosecute him.  ECF Nos. 61 at 15-6;

57 at 5.

### 1.  Establishing a Claim of Malicious Prosecution

      "The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious

prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation,

prosecution, conviction, and incarceration.'"  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir.

2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)).  Malicious prosecution

is "entirely distinct" from false arrest, in that a malicious prosecution tort remedies detention

accompanied by wrongful institution of the legal process.  *Wallace v. Kato*, 549 U.S. 384, 390

(2007).

In order to survive a motion for summary judgment against a malicious prosecution claim

pursuant to § 1983, a plaintiff must present a genuine issue of material fact as to the following:

> First, the plaintiff must show that a criminal prosecution was initiated
> against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d]
> in the decision to prosecute. Second, because a § 1983 claim is premised on the
> violation of a constitutional right, the plaintiff must show that there was a lack of
> probable cause for the criminal prosecution. Third, the plaintiff must show that,
> as a consequence of a legal proceeding, the plaintiff suffered a deprivation of
> liberty, as understood in our Fourth Amendment jurisprudence, apart from the
> initial seizure. Fourth, the criminal proceeding must have been resolved in the
> plaintiff's favor.

*Sykes*, 625 F.3d at 308-9 (citations omitted) (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.

2007); *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)) (internal quotation marks omitted)

(citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Gregory v. City of Louisville*, 444 F.3d

725, 748-50 (6th Cir. 2006); *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005);

*Voyticky*, 412 F.3d at 675; *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002);

*Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001)).

> The meaning of the term "participated" should be construed within the context of
> tort causation principles. Its meaning is akin to "aided." To be liable for
> "participating" in the decision to prosecute, the officer must participate in a way
> that aids in the decision, as opposed to passively or neutrally participating.

*Sykes*, 625 F.3d at 309 fn.5.

## 2. Whether There Was Probable Cause For the Criminal Prosecution

Plaintiff argues Defendants lacked probable cause for the prosecution of Plaintiff

because, as in the false arrest context, the indictment was based upon Lucas' false or misleading

testimony. ECF No. 48 at 52. Defendants argue that they did not participate in the prosecution

(1:10CV164)

of Plaintiff, and that, alternatively, there was sufficient probable cause to prosecute Plaintiff pursuant to the indictment and arrest. ECF Nos. 58 at 5, 59 at 8-9.

The constitutional torts of malicious prosecution and false arrest are independent torts based upon the Fourth Amendment. *Thacker v. City of Columbus*, 328 F.3d 244, 258-9 (6th Cir. 2003). As such, the Court must consider each alleged constitutional violation separately to determine whether Plaintiff sufficiently shows a genuine issue of material fact as to each of the constitutional violations he alleges. Plaintiff appears to allege two ways Defendants' conduct was unconstitutional–Defendants' participation in the investigation of Plaintiff after his arrest, and the pre-arrest conduct of Defendants that led to the initial arrest and the detention that followed. ECF No. 48 at 40, 51.

### a. Post-Arrest Conduct

Plaintiff alleges DEA Special Agent Cross and Task Force Officer Verhiley interviewed Plaintiff months after his arrest in a proffer, thereby "build[ing] the case against him." ECF Nos. 48 at 40; 38 at 12. Upon reviewing the evidence presented by both parties, however, it is undisputed that, upon his arrest, Plaintiff made a statement. ECF Nos. 48 at 40; 42-7 at 2-3. In his statement, Plaintiff "admitted to selling and transporting crack cocaine for a black male named [] Brooks, who was also originally from Detroit, MI.", and that Plaintiff "acted as a middle man for some deals with Brooks' crack cocaine in Mansfield, Ohio." ECF No. 42-7 at 2-3. Plaintiff further admits meetings were held at the house in which Plaintiff was arrested whereby a large supplier in Mansfield would discuss the crack cocaine business with other individuals. ECF No. 42-7 at 3.

39

At this point, Defendants have probable cause to detain and further investigate Plaintiff as Plaintiff's owns statement provides reasonably trustworthy information sufficient to warrant a prudent person in believing that Plaintiff had committed or was committing an offense. *See Gardenhire*, 205 F.3d at 315. Plaintiff's statement further lends reasonable suspicion that Plaintiff was conspiring with others in the Mansfield drug trade.

Plaintiff was charged and pleaded guilty to one count of conspiring with others to possess with intent to distribute fifty grams or more of crack cocaine. ECF No. 35-4 at 2-3. It is reasonable from the record to conclude that, based on Plaintiff's post-arrest statement, Count One was a reasonable charge against Plaintiff.

A superseding indictment was returned on March 15, 2006, apparently identical to the indictment of November 9, 2005. ECF No. 38-1 at 4. Plaintiff did not plead guilty to the specific charges in Count 15 and 24, and, as already noted, these charges were later dismissed.[25] ECF No. 38-7. Plaintiff does not specifically allege how the second indictment came about, and how Defendants' acts specifically induced the second indictment insofar as the distinct acts of individual Defendants can be shown to have independently induced the superseding indictment without the inclusion of Plaintiff's post-arrest statement.[26] Plaintiff merely alleges

---

[25] In the original indictment, Plaintiff was charged in Counts 15 and 22; in the superceding indictments the charges became Counts 15 and 24. ECF No. 38-2; 38-4.

[26] Plaintiff, while admitting he made a post-arrest statement, does not address the content of that statement. While the Court understands it is not the most flattering evidence for Plaintiff, the Court simply cannot make a determination as to the malicious prosecution claim without addressing the arrest statement and the probable cause that may arise from that statement. Without Plaintiff walking the Court through the malicious prosecution claim as Plaintiff sees it, the Court, left rudderless, falls back on the qualified immunity standard, and finds that Plaintiff does not meet his burden in presenting sufficient evidence a constitutional violation occurred..

(1:10CV164)

"Defendants...actually caused Noel Mott to be prosecuted." ECF No. 48 at 52. Plaintiff, without something more specific, has not met his burden of producing evidence that Cross, Verhiley or any other named Defendant participated in an investigation that rose to the level of a constitutional violation of malicious prosecution.

### b. Pre-Arrest Conduct

Though Plaintiff makes much in his brief about the conduct of Defendants prior to Plaintiff's arrest, Plaintiff fails to illustrate how, given the newly found probable cause of Defendants due to the post-arrest statement, Defendants conduct rose to the level of malicious prosecution. *See Sykes*, 625 F.3d at 316 (finding, after engaging in an analysis of causation principles in malicious prosecution cases, that allegedly false statements made by defendant to procure an arrest warrant do not automatically carry over to prosecution of plaintiff after his arrest absent a showing the false statements influenced the plaintiff's continued detention).

The Plaintiff and the Court cannot ignore incriminating statements made by Plaintiff shortly after his arrest that gave Defendants reasonable belief he had committed a crime in general, and, specifically, was in some way involved in the drug trade in Mansfield with individuals from Detroit. Engaging in the drug trade with other members hailing from Detroit was what Defendants initially, albeit unreasonably, believed Plaintiff had done. Shortly after

---

Further, in order to prevail on a claim for malicious prosecution, a plaintiff must show a deprivation of liberty. *Sykes*, 625 F.3d at 308-9. While true Plaintiff was detained after the arrest, he does not explain how this detention was caused by Defendants' conduct rather then his own incriminating post-arrest statement. He was released on bail November 14, 2005. ECF No. 38 at 5. To complicate matters, Plaintiff was caught by Metrich selling drugs on January 12, 2006, while on bail. ECF No. 31-15 at 2. He was rearrested April 13, 2006. The sale of drugs to the Metrich informant is another intervening cause and further muddies the detention waters.

41

(1:10CV164)

Plaintiff's arrest, Defendants had independent probable cause to detain, investigate and prosecute Plaintiff based on Plaintiff's statements, and Plaintiff has failed to show how the pre-arrest conduct of Defendants survive the intervening acts of Plaintiff.

Because Plaintiff has not presented evidence that the effect of Defendants pre-arrest conduct extended beyond Plaintiff's subsequent post-arrest statement resulting in Plaintiff's prosecution; ultimately influenced Plaintiff's continued detention; or further explain which Defendant acted and in precisely which way, Defendants are entitled to qualified immunity as to the malicious prosecution claim.

### C. Fabricating Evidence

Plaintiff argues Defendants violated a constitutional right when they allegedly fabricated evidence. ECF Nos. 1 at 12; 48 at 53. Plaintiff does not specify which constitutional amendment was violated, but it appears as though Plaintiff is bringing the evidence fabrication claim in conjunction with the false arrest and malicious prosecution claim, and such a claim is brought pursuant to the Fourth Amendment.

### 1. Establishing a Claim of Fabrication of Evidence

The Sixth Circuit has found that "fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)); *See also Gregory v. City of Louisville*, 444 F.3d 725, 739 (6th Cir. 2006). A fabricated evidence claim is generally brought in accordance with a claim of malicious prosecution or false arrest. *Id.*; *White v. Tamlyn*, 961 F.Supp. 1047, 1062

(1:10CV164)

(E.D. Mich. 1997) (The mere filing of false police reports alone does not amount to a constitutional violation) (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744-5 (1st Cir. 1980) (finding that "we do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws. If action is subsequently taken on the basis of that report,..., plaintiff's constitutional rights may well then be violated.")).

Plaintiff alleges Defendants "obscured Bray's wrongdoing thereby allowing Bray's evidence to gain credibility...in some cases [] perjur[ing] themselves in identifying persons who were not, in fact, present."[27] ECF No. 48 at 53. Specifically, Plaintiff alleges the fabrication of evidence occurred on September 6, 2005, when Defendants failed to corroborate Bray's story, and September 15, 2005, when Lucas wrote in a DEA-6 report stating that he and Mayer had identified Plaintiff as the man involved in the staged buy and failed to note Bray stole buy money. ECF No. 48 at 54. Defendants deny wrongdoing. ECF No. 57 at 6.

Because Plaintiff has not shown a constitutional violation of malicious prosecution, the Court considers the fabricating evidence claim as intertwined with the false arrest claim. The question asked therefore is whether Defendants fabricated evidence in order to manufacture probable cause to arrest Plaintiff.

### 2. September 6th Failure to Corroborate

Plaintiff claims Defendants fabricated evidence because of the misidentification of

---

[27] Plaintiff also alleges Defendants obtained a pre-trial identification of a suspect in an impermissibly suggestive manner. ECF No. 48 at 53. As this relates to a suspect that is not at issue in this case, the Court does not consider that allegation by Plaintiff.

Plaintiff during the staged buy on September 6, 2005.  ECF No. 48 at 54.  Plaintiff, however,

merely reiterates the facts he alleged in the section of his brief devoted to showing Defendants

did not have probable cause to arrest Plaintiff.  ECF No. 48 at 54.  Aside from showing

Defendants did not corroborate Bray's story, the facts do not show Defendants knowingly

fabricated evidence.

### 3.  September 15th DEA-6 Report

Plaintiff more specifically alleges that the September 15, 2005,  DEA-6 report was

falsified.  ECF No. 48 at 21, 54.  Plaintiff argues that Lucas and Mayer identified Plaintiff as

being the individual who met Bray at Richie's Store at the beginning of the deal; that Lucas

stated in the report he and Mayer had identified the Plaintiff; and that such identification went

beyond merely failing to corroborate and rose to the level of false statements.  ECF No. 48 at 37.

Defendants deny identifying Plaintiff, ECF No. 57 at 6, and Mayer specifically argues that, as he

did not author the DEA-6 report, he cannot be said to have falsified it.  ECF No. 55 at 16-7.

### a.  Identification of Plaintiff

The DEA-6 report states,

> 6.  At approximately 5:43 PM, S/A Lucas and Sgt Matt Mayer observed
> Noel MOTT meet with the CS [Bray] in the parking lot.  MOTT was wearing a
> black T-shirt and gray pants.
> 7.  At approximately 5:47 PM, S/A Lucas and Sgt. Mayer followed the CS
> and MOTT, who had entered the CS' vehicle, to the front of 435 Tremont
> Avenue.  MOTT entered the residence and returned almost immediately with
> another black male dressed in a plaid shirt and shorts.  MOTT was observed to
> meet with the CS.  The CS then departed and was followed to a pre-determined
> meet location.  MOTT and this unknown male re-entered 435 Tremont Avenue,
> Mansfield, Ohio.

ECF No. 49-2 at 14349.  As the language in the report reflects, Lucas, the author, clearly writes

that he and Mayer identified the man as Plaintiff, as opposed to referring to the man as simply

"the suspect"; "the suspect allegedly Mott"; or "the suspect the CS has identified as Mott".[28]

A  reader of the report would believe that Lucas and Mayer had officially identified the

man as "Noel Mott."  Defendant Mayer's argument that, "when viewed in context, the report

states nothing more than that Lucas and Mayer saw a person, *whom the officers expected to be*

*Mott*, meet Bray before the drug sale," does not appear, on the plain face of the report, to

accurately reflect the statements in the report that Mayer and Lucas had identified the man as

Plaintiff.[29]  ECF No. 57 at 6.

Mayer additionally argues that he did not know what Plaintiff looked like at the time of

the identification and therefore could not have identified the man correctly.  ECF No. 57 at 6.

This does not help Mayer's argument, since Plaintiff is specifically alleging Defendants

identified Plaintiff without verifying it was, in fact, Plaintiff.  Mayer's last argument is that,

"even if Lucas *did* mean to say that Mayer had specifically identified Mott as the drug-seller on

that occasion," Mayer did not write the report, or did not know what Lucas had written in the

report.  ECF No. 57 at 6.  The fact that Mayer did not personally pen the report does not absolve

---

[28] The report at no time before or after paragraphs 6 and 7 qualifies the identification of
Plaintiff.  ECF No. 49-2 at 14348-50.

[29] The DEA-6 report on September 6th, for example, reads: "The CS stated that he/she had
observed MOTT"; "The CS stated that MOTT"; "Det Metcalf was advised by the CS, who was
inside the residence, that MOTT"; and "the CS stated he/she had purchased from MOTT."  ECF
No. 49-2 at 14352-3.  These statements accurately reflect the CS is identifying Plaintiff.  As
Lucas penned all the DEA-6 reports, the discrepancy cannot be attributed to different styles of
report writing, and Defendants offer no further logical explanation.

him from liability as to the content of the report. Further, the Court can not believe that in the context of identifying a suspect when performing surveillance on a drug buy, a reasonable police officer would think that affirmatively identifying a suspect to the agent who writes the reports would not yield a report with the identifying information included.

For his part, Lucas, in his brief before the Court, admits to observing "a black male wearing a black T-shirt and gray slacks in the parking lot" but fails to explain how his statements identifying Plaintiff ended up in the report. ECF No. 31 at 10. The record shows that the statements in the report conclusively identified Plaintiff as the man dealing drugs to Bray, and that Lucas and Mayer were the officers who identified him. ECF No. 49-2 at 14349.

### b. False Statement Omitting Bray's Theft

The DEA-6 report also states:

> 9. The CS returned the remaining $780.00 OGF to S/A Lucas. The CS and his/her vehicle were again searched with negative results for any drugs or money.[30]

ECF No. 49-2 at 14349. This is in direct conflict with the undisputed evidence that Bray hid the $780.00 near the radio compartment in his car, and it was discovered later by Verhiley when Verhiley searched the car. ECF No. 39 at 14. Paragraph nine is a material false statement or omission that Lucas knowingly wrote in the DEA-6 report.

### 4. Whether the False Report Created False Probable Cause

Plaintiff must show a causal link between the fabricated evidence and the probable cause

---

[30] The "again" refers to the fact that Defendants searched Bray's vehicle before he left for the staged buy. ECF No. 49-2 at 14348 ¶ 4.

determination.  Plaintiff sufficiently alleges that the false statements in the DEA-6 report

weighed in favor of a probable cause determination.  ECF No. 48 at 53.  The DEA-6 reports

were used during the criminal trial against Operation Turnaround defendants, indicating the

reports were relied upon throughout the investigation.  ECF No. 62-3 at 2.

The failure to note Bray's attempted theft salvaged the illusory credibility of Bray, and

served further to increase his credibility, as did the identifications by Lucas and Mayer.  The

report served to ratchet up the case against Plaintiff and certainly weighed in favor of the

decision to proceed with the indictment against him.  Had the report been a full and truthful

rendering of the days events, the decision to proceed with the indictment against Plaintiff would

have been halted or at least reconsidered.  Had the report not existed, Defendants would have

likely needed more before proceeding with the indictment.  Defendants, for their part, make no

argument the reports were not material to the probable cause determination.

Falsifying facts to establish probable cause to arrest an individual has been clearly

established as unconstitutional.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993); *Hinchman*,

312 F.3d at 205-6; *Hill*, 884 F.2d at 275; *Spurlock*, 167 F.3d at 995; *Gregory*, 444 F.3d at 739;

*Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) ("a prosecutor's decision to charge, a

grand jury's decision to indict...none of these decisions will shield a police officer who

deliberately supplied misleading information that influenced the decision.").  A reasonable

police officer would have known the unconstitutionality of the conduct.  Defendants make no

argument to the contrary.  Accordingly, qualified immunity is denied as to Defendants Lucas and

(1:10CV164)

Mayer based upon the fabrication of evidence to establish probable cause to arrest.[31]

### D. *Brady* Violations

Plaintiff argues Defendants violated a constitutional right when they allegedly withheld exculpatory evidence from the prosecutor, who, in turn, could not have turned it over to Plaintiff in his criminal case. ECF No. 48 at 54. Plaintiff alleges the withholding of exculpatory material caused him to plead guilty and argues that, had the apparent exculpatory material been turned over to him, he would not have pleaded guilty. ECF No. 48 at 37. Defendants argue they did not withhold evidence in violation of the *Brady* rule, and, even if they did, such alleged evidence was not material. ECF No. 31 at 22-25.

#### 1. Establishing a *Brady* Claim

The rule established in *Brady v. Maryland* requires prosecutors to turn over favorable evidence to the accused where the evidence is material to either guilt or punishment. 373 U.S. 83, 87 (1963). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-24 (1995) (quoting *U.S. v. Bagley*, 473 U.S. 667 (1985)). A "reasonable probability," in turn, "is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. The Sixth Circuit has extended the *Brady* rule to also obligate police to turn over unfavorable material to the prosecutor. *Moldowan v. City of Warren*,

---

[31] Because Lucas and Mayer seem to have conflicting versions of who actually identified the man as Plaintiff, there is a genuine issue of fact as to whether both Defendants caused the statements to be written into the report. The discrepancy is between Lucas and Mayer, however, and Plaintiff has met his burden as to both Defendants.

578 F.3d 351 (6th Cir. 2009) (holding that "the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police.").

Generally, the government's obligation extends to evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-2 (1999). The Supreme Court, however, has held that "the Constitution does not require the government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002); *United States v. Wells*, 2008 WL 215814 (6th Cir. Jan. 24, 2008).[32] Therefore, the only possible window for a *Bivens* or § 1983 action alleging a constitutional tort based upon a *Brady* violation prior to a criminal defendant entering a guilty plea is to assert that the government withheld exculpatory

---

[32] The analysis surrounding waiver of constitutional violations in a guilty plea is governed by the so-called "*Brady* trilogy." *See Tollet v. Henderson*, 411 U.S. 258 (1973) (reaffirming the *Brady* trilogy cases *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); and *Parker v. North Carolina*, 397 U.S. 790 (1970)). These cases, however, all deal with collateral actions based on *habeas* petitions. *See Tollet*, 411 U.S. at 266. The same analysis does not appear to apply to a *Bivens* or § 1983 action, when there is no harm of disrupting the trial court findings, as the public policy behind the *Brady* trilogy cases contemplates. *See Lefkowitz v. Newsome*, 420 U.S. 283, 289 (1975) (explaining the State has a legitimate expectation of finality after a conviction based upon a guilty plea); *Heck v. Humphrey*, 512 U.S. 477, 486, 89 (1994) (noting that, to bring a § 1983 claim for harm caused by actions that would render a conviction invalid, the conviction must be "reversed, expunged, invalidated, or impugned."); *Campbell v. Putnam*, 38 Fed. Appx. 298, 300 (6th Cir. 2002) (same). The Court does not have to determine whether the *Brady* trilogy cases govern the instant matter, because, as explained below, the Plaintiff's claim suffers from an incurable infirmary unrelated to the issue of voluntary waiver.

Even if it were appropriate for Plaintiff to attack the waiver, Plaintiff alleges he pleaded guilty to the charges because he was advised by his attorney that doing so would yield a lesser sentence. ECF No. 48 at 37. Such an allegation is insufficient to establish involuntary waiver. *See Brady v. U.S.*, 397 U.S. at 752-3 (reasoning that, though many defendants consider a lesser sentence when pleading guilty, this does not negate the importance or constitutionality of guilty pleas nor render them involuntary or unintelligent).

evidence.[33] Though Plaintiff alleges the government withheld exculpatory evidence prior to his entering a guilty plea, Plaintiff fails to show there was any material evidence directly relating to his plea, thereby precluding his *Brady* claim.

### 2. The Evidence Did Not Materially Prejudice Plaintiff

Plaintiff alleges Defendants failed to turn over evidence "that Defendants involved in Operation Turnaround were manufacturing evidence." ECF No. 48 at 55. Even if Defendants did manufacturing evidence, the evidence involved two counts that Plaintiff expressly denied participating in, and which were later dismissed by the government prior to Plaintiff's guilty plea. ECF No. 38-7. Plaintiff pleaded guilty to Count One of the March 15, 2006, superseding indictment (ECF No. 38-7 at 1), which states:

> From in or about the winter of 2004, to on or about November 8, 2005, the exact dates to the Grand Jury unknown, in the Northern District of Ohio, Eastern Division, and elsewhere, ...NOEL MOTT...and others known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together and with other persons, both known and unknown to the Grand Jury, to commit an offense against the United States of America, to wit: to possess with intent to distribute and to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of cocaine base (crack), a Schedule II narcotic controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), and to possess with intent to distribute and to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21,

---

[33] As another unit of the instant Court explained, in *United States v. Martin*, "Post-*Ruiz* authorities appear divided on whether *Ruiz's* holding extends to exculpatory as well as impeachment evidence. [citing contrasting circuit count cases]. If *Ruiz* is construed as extending to exculpatory evidence, then Martin's claim is once again foreclosed. However, it is unnecessary for the court to decide whether *Ruiz* does in fact extend, as Martin's claim also fails under a pre-*Ruiz* analysis." 2009 WL 2167924 *6 (N.D. Ohio July 21, 2009). The *Martin* court went on to analyze plaintiff's guilty plea pursuant to the rule established in *Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985). *Id*.

(1:10CV164)

United States Code, Sections 841(a)(1) and (b)(1)(B).

ECF No. 39-4 at 2,3.  Plaintiff also pleaded guilty to Count One of a separate indictment based

upon the sale of drugs on March 22, 2006, which involved another drug enforcement agency the

actions of which are not in dispute in the instant case.  ECF No. 55 at 10.

Count One of the superseding indictment does not allege with specificity the dates upon

which the alleged drug buys occurred.  Notably, Plaintiff did not plead guilty to Counts 15 and

24 of the indictment, which referred to the drug transactions on September 6th and 15th,

respectively.  ECF Nos. 38-7 at 1; 49-13.  The September 6th and 15th transactions were the

transactions in which Plaintiff specifically alleged Defendants manufactured evidence.  ECF No.

48 at 54.  Because Plaintiff did not plead guilty to these counts, he can not reasonably ask the

Court to find that had he known about Defendants' alleged fabrications he would have not

entered a guilty plea, because, of course, he did not enter a guilty plea, and those counts were

later dismissed.  ECF No. 38-7.

Plaintiff stated in his proffer on May 2, 2006, that he had in the past purchased drugs

from Bray and others, and had, on or around September 6th, purchased drugs from Jim Williams.

ECF No. 42-6.  To the extent Plaintiff contends the alleged manufacturing of evidence by

Defendants materially effected his decision to plead guilty to Count One based on these drug

transactions, the Court is equally unimpressed.  The evidence presented indicates Defendants

were not aware Plaintiff purchased drugs from Jim Williams–they thought he was purchasing

drugs from Bray.  Plaintiff admitted to buying drugs on numerous occasions and from numerous

suppliers, and it is based on these latter transactions Plaintiff was presumably pleading guilty to

51

pursuant to Count One. ECF No. 42-6. Therefore, there was no evidence, exculpatory or otherwise, that Defendants could have turned over to Plaintiff, since Plaintiff was admitting to something Defendants had neither contemplated nor specifically accused him of doing.

The Court therefore finds that the discovery of new information in the form of the alleged manufacturing of evidence on the part of Defendants is not material to Plaintiff's guilty plea, as Plaintiff successfully denied the counts related to the alleged manufacturing of evidence. Plaintiff has offered no theories as to how general knowledge about the alleged unlawful acts of Defendants would have changed the outcome of Plaintiff's remaining guilty plea, or even whether exculpatory evidence as to Plaintiff existed at all. Accordingly, Defendants are entitled to qualified immunity as to the claim alleging a *Brady* violation.

### E. Conspiracy Pursuant to § 1985

Plaintiff alleges Defendants violated a constitutional right when they conspired "to help stage drug deals, fabricate evidence, and tamper with evidence for the purpose of falsely charging" Plaintiff of crimes he did not commit.[34] ECF No. 1 at 17. Plaintiff alleges Defendants denied him equal protection of the law, in addition to alleging a violation of Plaintiff's Fifth,

---

[34] Plaintiff also alleges Defendants conspired with the purpose of "maliciously prosecuting, subjecting Plaintiff to an abuse of process, falsely imprisoning, and wrongfully convicting Plaintiff." ECF No. 1 at 14. As the Court has determined the malicious prosecution claim is not a viable claim, the Court will consider only Plaintiff's claim of conspiracy seemingly relating to false arrest. *See Dohner v. Neff*, 240 F.Supp.2d 692, 704 (N.D.Ohio 2002) (§ 1985 creates no new substantive rights but is "merely an enforcement vehicle for rights derived from other legal sources.").

(1:10CV164)

Eighth, and Fourteenth Amendments.  ECF No. 1 at 14.[35]  Defendants deny wrongdoing.  ECF No. 38 at 15.

### 1.  § 1985(3)

To state a claim pursuant to § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian*, 335 F.3d at 518-9 (citing *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983)). Acts which are alleged to have deprived the plaintiff of equal protection must be motivated by "class-based invidious discriminatory animus." *Bettio v. Village of Northfield*, 775 F.Supp. 1545, 1567 (N.D. Ohio 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Averitt v. Cloon*, 796 F.2d 195, 198 (6th Cir. 1986)).  The class must be founded upon race or another "inherent personal characteristic." *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980).

Plaintiff does not allege class-based discrimination in his complaint or opposition.

---

[35] Though Plaintiff does not specifically note the section of § 1985 Defendants allegedly violated, it appears Plaintiff is alleging a violation of §§ 1985 (2) and (3).  § 1985 defines conspiracy as, in pertinent part:
(2) Obstructing justice; intimidating party, witness, or juror.
If two or more persons [in any State or Territory] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws;
(3) Depriving persons of rights or privileges
If two or more persons in any State or Territory conspire... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.

(1:10CV164)

Plaintiff fails to provide any evidence of a class-based discriminatory animus or make sufficient factual allegations there was a meeting of the minds for the purpose of discriminating against a class of persons of which Plaintiff was a member. Because Plaintiff fails to make a *prima facie* claim of an equal protection violation, Defendants are entitled to qualified immunity. *Vakilian, 335 F.3d at 518-9*; *United Bhd. of C & J, 463 U.S. at 828-29*.

### 2. § 1985(2)

The Supreme Court has found that the second phrase of § 1985(2) likewise requires that the plaintiff show a discriminatory animus on the part of the defendants. *Kush v. Rutledge, 460 U.S. 719, 726-7 (1983)* (finding that the first phrase of § 1985(2), which refers to witness tampering, does not require a class-based discriminatory motive, but that the remaining section of § 1985(2) does require such animus be shown). Because it appears as though Plaintiff's claims are based upon the second phrase of § 1985(2), this claim fails for the same reason as the claim based on § 1985(3) fails.

Because Plaintiff fails to meet his *prima facie* burden of establishing a conspiracy claim pursuant to §§ 1985(2) or (3), the Defendants are entitled to qualified immunity.

### V. Conclusion

The parties are hereby on notice that the Motions to Dismiss based upon Qualified Immunity filed pursuant to Fed. R. 56(b) or (c) by Defendants Lucas, Faith and Metcalf are denied as a matter of law as to the false arrest claim. ECF Nos. 31, 32, 37. The Motion to Dismiss based upon Qualified Immunity filed by Cross is denied as to the false arrest claim due to the presence of a genuine issue of material fact. ECF No. 38.

(1:10CV164)

Qualified immunity is denied as a matter of law as to the fabrication of evidence claim as to Defendant Lucas.  ECF No. 31.  Defendant Mayer's Motion to Dismiss based upon Qualified Immunity is denied as to the fabrication of evidence claim due to the presence of a genuine issue of material fact.  ECF No. 33.  Qualified immunity as to all remaining claims is granted to Defendants Lucas, Faith, Metcalf, Mayer and Cross.

The Motions to Dismiss based upon Qualified Immunity filed pursuant to Fed. R. 56(b) or (c) by Defendants Sheldon, Tandy, Marotta, Corso, Ferester, Ansari and Verihiley are granted.  ECF Nos.34, 35, 36, 39.

The case will proceed against Defendants Lucas, Cross, Faith and Metcalf as to the false arrest claim and against Defendants Lucas and Mayer as to the fabrication of evidence claim.

IT IS SO ORDERED.


  July 15, 2011                            /s/ Benita Y. Pearson
Date                                      Benita Y. Pearson
                                          United States District Judge

55